UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | UNDER SEAL |
| v. | § § | CRIMINAL NO. H- |
| MELVIN OLUSOLA DAVIES and | § | 18 U.S.C. § 2 |
| KEVIN OLUFEMI DAVIES | § | 18 U.S.C. § 1349 |
| Defendants | § | 18 U.S.C. § 1347 |
| | § | 18 U.S.C. § 1957 |

16 CR 0208

FILED
MAY 19 2016
David J. Bradley, Clerk of Court

## INDICTMENT

THE GRAND JURY CHARGES:

### A. COUNT ONE
Conspiracy in violation of 18 U.S.C. § 1349

#### INTRODUCTION

At all times material to this indictment:

1. Under Title 18, United States Code, Section 24(b), a "health care benefit program" was any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service was provided to any individual, and included any individual or entity who provided a medical benefit, item, or service for which payment may be made under the plan or contract. The Medicare and Medicaid programs were health care benefit programs as defined in Title 18, United States Code, Section 24(b).

#### THE DEFENDANTS

2. MELVIN OLUSOLA DAVIES, defendant herein, at all times relevant, was a resident of Houston, Texas, and an owner and operator of KMD Healthcare Services Inc.

3. KEVIN OLUFEMI DAVIES, defendant herein, at all times relevant, was resident of Houston, Texas, and a manager of KMD Healthcare Services Inc.

4. KMD Healthcare Services Inc. ("KMD") was a business located on N. Bellaire Estates Drive, in Houston, Texas 77072, within the Southern District of Texas.

## THE MEDICARE PROGRAM

5. The Social Security Act of 1965 created the Medicare program to provide health insurance to certain qualified individuals. The United States Department of Health and Human Services administered Medicare through the Centers for Medicare and Medicaid Services ("CMS"). CMS contracted with Trailblazer Health Enterprises, LLC ("Trailblazer") and Novitas Solutions ("Novitas") to administer the Medicare program in Texas between January 2012 and January 2015. CMS, Trailblazer, and Novitas, provided and made available information about the Medicare program, rules, and regulations. The responsibilities of Trailblazer and Novitas included Medicare provider enrollment, and the processing and payment of Medicare claims.

6. Medicare Part B, also known as supplemental medical insurance, paid for health care services, including ambulance services, subject to specified conditions. Providers of health care services were required to enroll in the Medicare program and agree to the terms and conditions of program participation in order to receive Medicare payments. The terms and conditions included agreements (1) to abide by the Medicare laws, regulations, and program instructions; (2) to not knowingly present or cause to be presented false and fraudulent claims for payment; and (3) to not present claims for payment with deliberate ignorance or reckless disregard for their truth or falsity. The Medicare Supplemental Medical Insurance Trust Fund made payments to enrolled providers by electronically depositing payments into bank accounts.

7. Medicare paid for benefits, items, and services for qualified individuals enrolled with Medicare, known as beneficiaries. The Medicare ambulance benefit was intended to pay for the transport of beneficiaries only to certain destinations, only when a beneficiary could not be

safely transported by any other means, or when a beneficiary was bed-confined before, during, and after the transport. Medicare did not cover transport in vans, and privately owned vehicles, and had minimum standards for ambulance equipment and personnel. In addition to paying for ambulance transportation, Medicare reimbursed providers for the mileage travelled to and from approved destinations.

8. Medicare required the use of the Healthcare Common Procedure Coding System ("HCPCS") to process claims in an orderly and consistent manner. The HCPCS code for basic life support, non-emergency ambulance transportation was A0428. The HCPCS code for ambulance mileage was A0425. Medicare issued remittance notices to providers of health care services that identified the claims submitted for payment and provided information about the status of those claims.

## THE MEDICAID PROGRAM

9. The Texas Medicaid program was a joint State and Federal program designed to provide health care services to Texans who might otherwise go without medical care. The Texas Health and Human Services Commission ("HHSC") had responsibility for the Texas Medicaid program. HHSC contracted with the Texas Medicaid and Healthcare Partnership ("TMHP") to administer the Medicaid program in Texas. The responsibilities of TMHP included Medicaid provider enrollment, and the processing and payment of Medicaid claims.

10. Medicaid paid for a variety of health care benefits, items, and services for qualified beneficiaries, including ambulance transportation. To receive Medicaid payments providers were required to enroll with the Medicaid program, and agree to the terms and conditions of program participation. The terms and conditions included agreements (1) to submit claims in accordance with the billing guidelines and procedures of HHSC; (2) that the

information submitted in claims would be true, accurate, and complete; and (3) that all claims submitted would be for services actually rendered by the provider. Further, ambulance providers were required to operate according to the laws, regulations, and guidelines for ambulance services under Medicare Part B, in addition to operating under appropriate Texas laws.

11. Providers were required to submit claims for health care services covered by both Medicare and Medicaid to Medicare first, because Medicaid was the secondary payor for beneficiaries with benefits under both programs. Medicaid issued remittance notices to health care providers that identified the claims submitted, and provided information about the payment or denial of payment for services.

## THE CONSPIRACY

12. Beginning on or about March 1, 2012, and continuing thereafter to on or about January 12, 2015, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**MELVIN OLUSOLA DAVIES and**
**KEVIN OLUFEMI DAVIES**

did knowingly and willfully, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely to execute and attempt to execute a scheme and artifice to defraud a health care benefit program, namely the Medicare and Medicaid programs, and to obtain by means of false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of Medicare and Medicaid in connection with the delivery of and payment for health care benefits, items, and services in violation of Title 18, United States Code, Section 1349.

## OBJECT OF THE CONSPIRACY

13. The object of the conspiracy was to receive payments from Medicare and Medicaid for ambulance services that were not medically necessary and not provided.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy included, but were not limited to the following:

14. Melvin Olusola DAVIES and Kevin Olufemi DAVIES would and did operate KMD from their home, a townhouse in a gated community.

15. Melvin Olusola DAVIES would and did enroll KMD in Medicare and Medicaid.

16. Melvin Olusola DAVIES and Kevin Olufemi DAVIES would and did bill and cause to be billed, Medicare and Medicaid for ambulance services provided by vans and not by ambulances.

17. Melvin Melvin Olusola DAVIES and Kevin Olufemi DAVIES would and did bill and cause to be billed, Medicare and Medicaid for ambulance services for beneficiaries who did not need ambulance transportation.

18. Melvin Olusola DAVIES and Kevin Olufemi DAVIES would and did bill and cause to be billed, Medicare and Medicaid for ambulance mileage that was not provided.

19. Melvin Olusola DAVIES and Kevin Olufemi DAVIES would and did bill and cause to be billed, Medicare and Medicaid for ambulance services and mileage that was not documented on ambulance transport "run sheets."

20. Melvin Olusola DAVIES and Kevin Olufemi DAVIES would and did bill and cause to be billed, Medicare and Medicaid for approximately $6,293,108.00 in claims for ambulance services and mileage which was not medically necessary and not provided; and received at least $2,337,390.00 as payment for those claims.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

21. In furtherance of the conspiracy and to effect the objects thereof, the defendants performed and caused to be performed, among others, the acts set forth in Counts 2 - 17 of this Indictment, hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment, in the Southern District of Texas, and elsewhere; all in violation of Title 18, United States Code, Section 1349.

### B. COUNTS TWO –SEVENTEEN
### Health Care Fraud: 18 U.S.C. §1347

1. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein, paragraphs 1 through 11 of Count One of this Indictment.

2. Beginning on or about March 1, 2012, and continuing thereafter to on or about January 12, 2015, in the Houston Division of the Southern District of Texas, and elsewhere,

**MELVIN OLUSOLA DAVIES and**
**KEVIN OLUFEMI DAVIES**

defendants herein, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully, execute and attempt to execute, a scheme and artifice to a defraud health care benefit program, namely Medicare and Medicaid, and to obtain money owned by and under the custody and control of Medicare and Medicaid by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services.

### PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

3. It was a purpose of the scheme and artifice to defraud was to receive payments from Medicare and Medicaid for ambulance services that were not medically necessary and not provided.

## MANNER AND MEANS OF
## THE SCHEME AND ARTIFICE TO DEFRAUD

4.   The Grand Jury re-alleges and incorporates by reference as if fully alleged herein, the Manner and Means alleged in paragraphs 14 through 20 of Count One of this Indictment.

## EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

5.   On or about the dates set forth in the Counts below, in the Houston Division of the Southern District of Texas and elsewhere,

## MELVIN OLUSOLA DAVIES and
## KEVIN OLUFEMI DAVIES

defendants herein, aided and abetted by others known and unknown to the Grand Jury, did execute and attempt to execute the aforesaid described scheme and artifice to defraud Medicare and Medicaid by submitting and causing to be submitted approximately $6,293,108.00 in false and fraudulent claims for services that were not medically necessary and not provided, including the claims set forth in the Counts below:

| COUNT | Name | CPT Codes Included: | Alleged Date of Service | Date Claim Submitted | Amount Billed Included: | Amount Paid by M/care & *M/caid, Included: | Nature of Falsity, Included but Not Limited to: |
|---|---|---|---|---|---|---|---|
| 2 | Phyllis S | A0425 | 12/23/13 | 12/11/14 | $264.00 | $122.29 *$31.19 | Ambulance Service not provided as billed |
| 3 | Phyllis S | A0428 | 12/23/13 | 12/11/14 | $1,000.00 | $346.26 *$88.32 | Ambulance Service not provided as billed |
| 4 | Phyllis S | A0425 | 09/22/14 | 10/01/14 | $264.00 | $123.49 | Ambulance Service not provided as billed |
| 5 | Phyllis S | A0428 | 09/22/14 | 10/01/14 | $1,000.00 | $350.20 | Ambulance Service not provided as billed |
| 6 | Eva B | A0425 | 12/23/13 | 01/02/14 | $336.00 | $155.64 | Ambulance Service not provided as billed |
| 7 | Eva B | A0428 | 12/23/13 | 01/02/14 | $1,000.00 | $346.26 | Ambulance Service not provided as billed |
| 8 | Eva B | A0425 | 09/09/14 | 09/19/14 | $336.00 | $157.18 | Ambulance Service not provided as billed |
| 9 | Eva B | A0428 | 09/09/14 | 09/19/14 | $1,000.00 | $350.20 | Ambulance Service not provided as billed |

| 10 | Teresa J | A0425 | 06/16/14 | 07/10/14 | $120.00 | $0.00 | Ambulance Service not provided as billed |
| 11 | Teresa J | A0428 | 06/16/14 | 07/10/14 | $1,000.00 | $0.00 | Ambulance Service not provided as billed |
| 12 | Marlana S | A0425 | 02/25/13 | 03/07/13 | $144.00 | $68.06 | Ambulance Service not provided as billed |
| 13 | Marlana S | A0428 | 02/25/13 | 03/07/13 | $1,000.00 | $353.32 *$38.68 | Ambulance Service not provided as billed |
| 14 | Marlana S | A0425 | 03/28/13 | 04/10/13 | $144.00 | $68.06 | Ambulance Service not provided as billed |
| 15 | Marlana S | A0428 | 03/28/13 | 04/10/13 | $1,000.00 | $353.32 *$38.68 | Ambulance Service not provided as billed |
| 16 | Marlana S | A0428 | 11/20/14 | 11/26/14 | $336.00 | $157.18 | Ambulance Service not provided as billed |
| 17 | Marlana S | A0425 | 11/20/14 | 11/26/14 | $1,000.00 | $350.20 | Ambulance Service not provided as billed |

In violation of Title 18, United States Code, Sections 1347 and 2.

### C. COUNTS EIGHTEEN - NINETEEN
### Engaging in a Monetary Transaction in Criminally Derived Property
### 18 U.S.C. §§ 1957(a) and 2

1. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 and 11, and 14 – 20, of Count One of this Indictment.

2. On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere,

**MELVIN OLUSOLA DAVIES**

defendant herein, did knowingly engage and attempt to engage in the following monetary transactions by, though, or to, a financial institution affecting interstate or foreign commerce, each in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Section 1347.

| Count | Date | Check | Transaction |
|---|---|---|---|
| 18 | 01/04/2013 | 1229 | Signed a check for $20,717.50 payable to Kevin Davies from the KMD Healthcare Service Inc. Bank of America account ending in *4877 |

| 19 | 01/04/2013 | 1230 | Signed a check for $20,717.50 payable to Melvin Davies from the KMD Healthcare Service Inc. Bank of America account ending in *4877 |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

### D. COUNT TWENTY
### Engaging in a Monetary Transaction in Criminally Derived Property
### 18 .S.C. §§ 1957(a) and 2

1.  The Grand Jury re-alleges and incorporates by reference as if fully alleged herein paragraphs 1 and 11, and 14 – 20, of Count One of this Indictment.

2.  On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere,

### KEVIN OLUFEMI DAVIES

defendant herein, did knowingly engage and attempt to engage in the following monetary transactions, by, though, or to, a financial institution affecting interstate or foreign commerce, each in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Section 1347.

| Count | Date | Check | Transaction |
|---|---|---|---|
| 20 | 01/04/2013 | 1229 | Negotiation of a check for $20,717.50 payable to Kevin Davies from the KMD Healthcare Service Inc. Bank of America account ending *4877 |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

### E. NOTICE OF CRIMINAL FORFEITURE
### 18 U.S.C. §§ 982(a)(1), 982(a)(7)

1.  Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to defendants,

### MELVIN OLUSOLA DAVIES and
### KEVIN OLUFEMI DAVIES

that upon conviction for a violation of 18 U.S.C. §§ 1347 and 1349 (related to federal health care offenses), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, shall be forfeited to the United States.

2. Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendants,

**MELVIN OLUSOLA DAVIES and
KEVIN OLUFEMI DAVIES**

that upon conviction for a violation of 18 U.S.C. § 1957 (related to federal money laundering offenses), all property, real and personal, involved in such offense, or traceable to such property shall be forfeited to the United States.

**MONEY JUDGMENT**

3. Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable. The amount is estimated to be, but is not limited to at least $2,337,390.53 in United States dollars.

**PROPERTY SUBJECT TO FORFEITURE**

4. The property subject to forfeiture includes, but is not limited to the following:

    i. At least $2,337,390.53 in United States dollars,

    ii. A 2012 Mercedes Benz CLS, Vin No. WDDLJ7EB2CA025239, Texas license plate GB2GOD, registered to Kevin Davies, and

    iii. A 2010 Porsche Panamera, Vin No. WP0AB2A72AL064157, Texas license plate TYG4MB, registered to Melvin Davies.

## SUBSTITUTE ASSETS

5. In the event that the property subject to forfeiture, as a result of any act or omission by any defendant,

    a. cannot be located upon exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value, or

    e. has been comingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of such property, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

**Original Signature On File**

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: *[signature]*
JULIE M. REDLINGER
ASSISTANT UNITED STATES ATTORNEY